## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| ELEVATED TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-0004C |
| | ) | |
| THE UNITED STATES, | ) | Filed: May 6, 2022 |
| | ) | |
| Defendant, | ) | Reissued: June 3, 2022[1] |
| | ) | |
| and | ) | |
| | ) | |
| GREENEFFICIENT, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Elevated Technologies, Inc. ("Elevated") filed this post-award bid protest, challenging the Department of Veterans Affairs' ("VA") decision to award an elevator maintenance contract to Defendant-Intervenor GreenEfficient, Inc. ("GreenEfficient"). Elevated contends that the VA acted arbitrarily and capriciously in issuing the award because (a) GreenEfficient should have been disqualified for submitting a defective quote or not selected because of its past performance and lack of experience, and (b) Elevated should not have been disqualified for submitting a deficient company license. Elevated seeks a permanent injunction to cancel the award and an order directing the VA to correct its errors either through a reevaluation of quotes or by reconducting the procurement.

Before the Court are the parties' Cross-Motions for Judgment on the Administrative

---

[1] The Court issued this opinion under seal on May 6, 2022, and directed the parties to file any proposed redactions by May 17, 2022. The opinion issued today incorporates the proposed redactions received. Redacted material is represented by bracketed ellipses "[. . .]."

Record.  The Government also simultaneously filed a Motion to Dismiss for failure to state a claim upon which relief may be granted.  For the reasons discussed below, the Court finds that dismissal is not warranted and that Elevated is entitled to judgment on the record because the VA should have disqualified GreenEfficient for improperly submitting multiple quotes in response to the RFQ.

## I.   BACKGROUND

### A.   The Solicitation

On August 31, 2021, the VA issued Request for Quotation No. 36C25621Q1431 ("RFQ") for a contractor to perform all "preventative maintenance, repair, renovation, and inspection of elevators services" at the Michael E. DeBakey VA Medical Center in Houston, Texas.  Admin. R. 354, ECF No. 14-1 (hereafter "AR").[2]  Under the terms of the RFQ, the awardee would provide personnel, equipment, and other resources necessary to operate 49 elevators for a base period of one year with four one-year options exercisable at the VA's discretion.  AR 318, 354.  The awardee's duties would include systematic equipment examination, which required cleaning, lubricating, adjusting, repairing, tensioning, replacing defective parts, and providing emergency services.  AR 356–57.  The RFQ required that the awardee install real-time monitoring software for each of the 49 units.  AR 314, 357.

The RFQ also required that certain key personnel perform the services of the contract.  AR 364, 367–68.  First, the RFQ required a Contract Manager "who shall be responsible for the performance of the work" and have "full authority to act on all contract matters relating to the daily operation of the contract."  AR 364; *see* AR 367.  Second, the RFQ required certified Elevator

---

[2] For ease of reference, citations to the Administrative Record refer to the bates-labeled page numbers rather than the ECF page numbers.

Mechanics/Technicians who had completed an apprenticeship program and passed the requisite

Mechanic/Technician Examination to perform the physical maintenance on the units.  AR 364,

367.  The specific qualifications of these key personnel were described as follows:

> The Contract Manager have [sic] a minimum of 5 years of technical experience managing maintenance and repair of elevator equipment identical or similar to the vertical transportation equipment, within the past 10 years. The references for the 5 years of technical experience shall include the names, addresses, and telephone numbers of specific companies and personnel to contact. The Contract Manager shall be a licensed elevator mechanic from a state with a licensed elevator mechanic requirement/program within the within the United States of America. . . .

> The Elevator Technicians provided must complete an Apprenticeship program and passed [sic] the Mechanic/Technician Examination approved and certified by the U.S. Department of Labor.  Any apprentices working under this contract must be actively pursuing certification and working under the supervision of a certified elevator technician.  The Elevator Technician shall be a licensed elevator mechanic from a state with a licensed elevator mechanic requirement/program within the United Stated of America.

AR 367–68.  The selection, assignment, and management of employees working under the contract

was the exclusive responsibility of the awardee.  AR 365.    The VA specifically instructed

contractors to submit a copy of the license and resume demonstrating the required technical

experience of the Contract Manager "with their quote."  AR 409.

Along with the key personnel, the contractor itself was required to be "a licensed elevator

mechanic from a state with a licensed elevator mechanic requirement within the United States of

America," as well as insured and otherwise qualified to perform the requisite services in the state

of Texas.  AR 364; *see* AR 408 ("The contractor shall be a licensed elevator mechanic from a state

with a licensed elevator mechanic requirement/program within the United States of America.").

Contractors also needed at least five years' technical experience (within the last 10 years)

successfully providing equivalent elevator maintenance and repair services.  *Id.*  The RFQ

instructed contractors to submit a company-level license evidencing their authority to work on

elevators in Texas "by the solicitation due date with their quote." AR 408.

The RFQ further mandated that all contractors "strictly comply" with the quote preparation instructions outlined in the solicitation "[i]n order to be considered." AR 407. It noted that "[f]ailure to furnish quotes that comply with the instructions . . . [by the] due date for submissions may result in elimination from consideration of award." *Id.* Contractors who submitted quotes "with deviations, price assumptions, or exceptions not in compliance with the solicitation [would] be determined to be nonresponsive." *Id.* The RFQ also limited contractors to only one quote, mandating that a contractor's submission of "more than one quote" would result in all quotes being rejected and the company being deemed "nonresponsive." *Id.*

The VA provided that, following evaluation, it would award the contract to the contractor "whose quotation conforming to the solicitation will be the most advantageous to the Government, price and other factors considered." AR 414. The VA planned to review quotes using the "minimally burdensome" evaluation process outlined in Federal Acquisition Regulation ("FAR") § 13.106-2(b)(3) using three evaluation factors: (1) technical; (2) past performance; and (3) price. *Id.* The VA defined "technical" as the extent to which the bidder can meet or exceed the contract requirements based on the information requested in the RFQ instructions. *Id.* The VA defined "past performance" as the contractor's likelihood of success in fulfilling the contract requirements as indicated by its past performance history. AR 415. On price, the VA would evaluate the total of all line-item prices including all options. *Id.* The VA specifically advised contractors that it was "not requesting or accepting alternate quotations." AR 414.

After issuing the RFQ, the VA responded to several questions by prospective contractors. AR 314. The VA incorporated its responses to these questions into the RFQ by issuing Amendment 0001. AR 312. In response to questions about the licensing requirement for Contract

4

Managers and Elevator Technicians, the VA stated that companies could provide proof of International Union of Elevator Constructors ("IUEC") membership in lieu of a state-issued elevator mechanics' license because "IUEC is the standard for the industry."  AR 316.  In response to a question about the qualifications of the Contract Manager, the VA stated that one of the on-site mechanics could fill this role as long as he or she had the requisite authority and certifications.  *Id.*

## B.    The Award

Six companies submitted quotes in response to the RFQ.  AR 901–02.  The VA immediately disqualified three submissions as either facially noncompliant or untimely.  *Id.* Elevated, GreenEfficient, and JohnsonDanforth & Associates remained as the only responsive contractors.  AR 902.  GreenEfficient is the incumbent contractor at the DeBakey Medical Center. AR 528.  Elevated is a Michigan corporation with 33 years of experience in the elevator maintenance industry, including servicing elevators at other VA facilities in Texas.  AR 55.

On September 27, 2021, the VA awarded the contract to GreenEfficient for $4,661,302.31. AR 916.  This was more than the price quoted by Elevated.  AR 497.  Elevated subsequently requested a debriefing on the award decision.  AR 919.  Because the RFQ was issued under the FAR's simplified acquisition procedures, the VA provided a brief explanation instead, explaining that it disqualified Elevated from contention for the award because it "did not demonstrate a contractor's elevator mechanic license for a state with a licensed elevator mechanic requirement/program within the United States . . . ."  AR 923.  Instead of providing a company-level elevator mechanic license, Elevated submitted a filing endorsement related to its general Michigan business license. AR 448–49.  Elevated's quote cited a provision from the Public Buildings Act, asserting that, "[b]y this law, our license is sufficient to allow us to perform the work under this contract in the State of Texas."  *Id.*  Having determined that Elevated's quote was

technically unacceptable, and that GreenEfficient provided the only technically acceptable quote in response to the RFQ, the VA finalized a contract with GreenEfficient.  AR 902, 924.

## C.    Procedural History

On October 7, 2021, Elevated protested the VA's decision with the Government Accountability Office ("GAO").  AR 1213.[3]  This triggered an automatic performance suspension, which resulted in the VA entering into a bridge contract with GreenEfficient to ensure uninterrupted service at the facility.  AR 1235.  The VA subsequently moved to dismiss Elevated's protest.  AR 1233.  After nearly 100 days without receiving a ruling on the motion, Elevated withdrew its protest at the GAO to proceed with an action in the Court of Federal Claims.  AR 1431.

On January 4, 2022, Elevated filed its Complaint.  *See* Pl.'s Compl., ECF No. 1.  On February 1, 2022, Elevated filed a First Amended Complaint, as well as its Motion for Judgment on the Administrative Record.  *See* Pl.'s Am. Compl., ECF No. 17; Pl.'s Mot. for J. on Admin. R., ECF No. 16.  First, Elevated argues that the award to GreenEfficient should be set aside because the VA should have disqualified GreenEfficient's quote for failing to comply with the terms of the RFQ.  Pl.'s Mem. In Support of Mot. for J. on Admin. R., ECF No. 16-1.  Specifically, Elevated contends that GreenEfficient did not provide the requisite license for the Contract Manager it identified in its quote and, contrary to the terms of the RFQ, submitted multiple quotes.  *Id.* at 1– 2.  Even if those deficiencies were not disqualifying, it claims that the VA should have rejected GreenEfficient's quote because GreenEfficient [. . .].  *Id.* at 2.  Second, Elevated argues that the

---

[3]  Elevated simultaneously filed a still-pending suit with the Small Business Administration's Office of Hearings and Appeals ("OHA"), challenging GreenEfficient's status as a service-disabled veteran-owned small business ("SDVOSB").  AR 1035.  Elevated contends GreenEfficient was not eligible for SDVOSB status at the time of its quote because [. . .].  AR 1040.

VA should not have disqualified its quote for failing to provide a company-level elevator mechanic license. *Id.* According to Elevated, the RFQ did not require such license and, if it did, the RFQ contained a latent ambiguity that should be construed against the VA. *Id.*

On February 15, 2022, the Government filed a combined Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record. *See* Govt.'s Cross Mot. for J. on Admin. R., ECF No. 19. On the same day, GreenEfficient filed its Cross-Motion for Judgment on the Administrative Record. *See* Def.-Intervenor's Cross Mot. for J. on Admin R., ECF No. 20. The cross-motions raise threshold issues, including whether Elevated's claims are barred by the doctrine of laches and whether the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for failing to plead facts supporting Elevated's request for permanent injunctive relief. *See* ECF No. 19 at 18; Def.-Intervenor's Mem. In Opp'n to Pl.'s Mot. & In Support of Cross Mot. at 9, ECF No. 20-1. On the merits, the Government and GreenEfficient contend that Elevated's contract manager claim is a matter of contract administration beyond the Court's bid protest jurisdiction because the RFQ did not require contractors to designate a Contract Manager at the time they submitted their quotes. *See* ECF No. 19 at 28; ECF No. 20-1 at 12. They further contend that GreenEfficient merely submitted multiple prices in a single quote (not multiple quotes) and that its experience and past performance were sufficient, pointing to its history as the incumbent contractor. *See* ECF No. 19 at 29–33; ECF No. 20-1 at 12–17. Lastly, they argue Elevated was properly disqualified because the plain language of the RFQ required a company-level elevator mechanic license. *See* ECF No. 19 at 20–25; ECF No. 20-1 at 17–21.

The parties' motions are now fully briefed. *See* Pl.'s Reply, ECF No. 23; Def.-Intervenor's Reply, ECF No. 26; Govt.'s Reply, ECF No. 27. The Court held argument on March 11, 2022.

## II.  LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion

Dismissal under RCFC 12(b)(6) for failure to state a claim upon which relief may be granted "is appropriate when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  To survive dismissal, a complaint must allege facts "plausibly suggesting" the claimant is entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").  When reviewing a Rule 12(b)(6) motion, the court "assume[s] all well-pled factual allegations are true" and makes "all reasonable inferences in favor of the nonmovant."  *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to shield a complaint from dismissal.  *Iqbal*, 556 U.S. at 678.  A court is likewise "not bound to accept as true a legal conclusion couched as a factual allegation."  *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (internal quotation marks and citation omitted).

### B.    Motion for Judgment on the Administrative Record

RCFC 52.1(c) governs motions for judgment on the administrative record.  Such motions are "properly understood as . . . an expedited trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  In contrast to the standard for summary judgment, "the standard for judgment on the administrative record is narrower" and involves determining, "given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the

8

burden of proof to show that the [challenged action or] decision was not in accordance with the law." *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357). Therefore, a genuine issue of disputed fact does not prevent the Court from granting a motion for judgment on the administrative record. *See Bannum*, 404 F.3d at 1357.

## C.    Bid Protest Standard of Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), provides the Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement . . . ." 28 U.S.C. § 1491(b)(1).  In such actions, the Court "review[s] the agency's decision pursuant to the standards set forth in section 706" of the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Accordingly, the Court examines whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).  Under such review, an "award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Impresa*, 238 F.3d at 1332 n.5.  To prevail in a bid protest, "a protestor must show a significant, prejudicial error in the procurement process."  *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).  A protestor establishes prejudice by showing "that there was a substantial chance it would have received the contract award but for that error."  *Alfa Laval*, 175 F.3d at 1367 (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).

In reviewing an agency's procurement decisions, the Court does not substitute its judgment for that of the agency. *See Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 231 (1997); *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997); *see also M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations."). The disappointed bidder "bears a heavy burden," and the contracting officer is "entitled to exercise discretion upon a broad range of issues." *Impresa*, 238 F.3d at 1332 (citations and internal quotation marks omitted). This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988); *see Campbell v. United States*, 2 Cl. Ct. 247, 249 (1983). A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333. "[T]hat explanation need not be extensive." *Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 172 (2009) (citing *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973)).

### III.  DISCUSSION

Although the parties' motions raise myriad issues, this case is properly resolved on narrower grounds. First, the doctrine of laches does not bar Elevated's claims because Elevated promptly pursued an administrative remedy at the GAO and then an action in this Court, nor should its claim be dismissed under RCFC 12(b)(6). Second, Elevated is entitled to judgment on the record because GreenEfficient submitted more than one quote in violation of the RFQ's mandatory language. Per the RFQ, the consequence of providing multiple quotes was that all quotes by the contractor would be rejected. Had the VA properly disqualified GreenEfficient it would have been required to reprocure the elevator maintenance services, as there would have been no technically

acceptable quote in response to the RFQ.  Because Elevated would have had another chance to compete, regardless of whether it was properly disqualified initially, it was prejudiced by the VA's error and is entitled to injunctive relief.

**A.      Elevated's Claim Should Not Be Dismissed for Failure to State a Claim.**

As a preliminary matter, the Government and GreenEfficient contend that the instant case should be dismissed under RCFC 12(b)(6) for failure to state a claim because Elevated did not affirmatively plead in its Amended Complaint or argue in its opening brief the elements of a permanent injunction.  *See* ECF No. 19 at 18; ECF No. 20-1 at 7.  Elevated responds that while it did not "draft a treatise" on the matter, such positions amount to "unnecessary formalism" because the requested relief flows naturally from the facts and legal arguments in its briefing.  ECF No. 23 at 8, 10.  It advocates for addressing whether an injunction is warranted after engaging with the merits of the claims.  *Id.*

A court may award in a bid protest action "any relief that the court considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2).  The Government is correct that such relief is not automatic.  *See PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004); *id.* at 1227 ("[T]here is no evidence that Congress intended to abolish the tradition of equitable discretion in issuing injunctive relief when it enacted section 1491(b)(4) in ADRA . . . .").  Rather, the protestor must demonstrate that injunctive relief is warranted through application of the well-established four factor test.  *Id.* at 1228–29 (listing the factors: success on the merits, irreparable harm, balance of harms, and public interest).

The Government and GreenEfficient have not shown, however, that dismissal of an action—as opposed to a simple denial of the requested injunction—is appropriate where a plaintiff has not made such showing.  As Elevated notes, the purpose of a Rule 12(b)(6) motion to dismiss

is to "'test[] the sufficiency of a complaint.'"  ECF No. 23 at 6 (quoting *Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 97 Fed. Cl. 96, 135 (2010)).  A court must dismiss where the complaint does not plead facts sufficient for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  But whether the plaintiff has sufficiently alleged a cause of action upon which relief *may* be granted seems to present a separate question from whether it has ultimately shown entitlement to the particular form of relief it seeks—here, an exercise of the Court's equitable powers to enjoin a contract award.

*Cubic Defense Systems, Inc. v. United States*, 45 Fed. Cl. 450, 474 (1999), on which the Government and GreenEfficient rely, does not hold otherwise.  *Cubic Defense* dealt with a wholly deficient bid protest claim that the court dismissed on the merits—not under RCFC 12(b)(6).  45 Fed. Cl. at 475.  Although acknowledging the protestor's failure to make a case for injunctive relief, the court dismissed the case because it found no error in the challenged procurement or resulting prejudice to the protestor.  *Id.* at 473.  The court referenced the protestor's deficient "papers" and "bare assertions" in the complaint in the final section of the opinion only as additional support for its conclusion.  *Id.* at 474.

Here, it is undisputed that Elevated's Amended Complaint sufficiently pled facts stating a bid protest claim upon which relief may be granted and included a request for injunctive relief.  Unlike in *Cubic Defense*, where the claim was otherwise meritless, Elevated's claim should not be dismissed out of hand before analyzing the merits.  The Court agrees that in the context of bid protests (which are typically expedited proceedings) protestors are ordinarily expected to attempt to make an affirmative showing on the permanent injunction factors in their opening dispositive brief, unless otherwise directed by the court.  *See* ECF No. 19 at 19.  Although Elevated formally

included such argument for the first time in its combined opposition and reply, the Court does not believe the Government or GreenEfficient have been unfairly prejudiced as the briefing schedule permitted both parties a subsequent reply, in addition to oral argument. *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (holding that fairness and procedure require that new arguments raised on reply are waived because "the non-moving party ordinarily has no right to respond to the reply brief").

As such, the Amended Complaint should not be dismissed for failure to state a claim under RCFC 12(b)(6).

**B.      The Doctrine of Laches Does Not Bar Elevated's Suit Because Elevated Timely Pursued Relief at the GAO.**

GreenEfficient also raises the doctrine of laches as a threshold bar to Elevated's protest. It contends that Elevated's claims are untimely because it waited nearly three months after learning of the award decision before filing this action. *See* ECF No. 20-1 at 9. According to GreenEfficient, Elevated's choice to first file a protest with the GAO and then withdraw it before the GAO issued a decision amounts to "forum-shopping" that caused material prejudice because the GAO protest triggered an automatic performance suspension of the contract. *Id.* at 10. Elevated responds that it should not be punished for pursuing its statutory right to seek relief before the GAO. *See* ECF No. 23 at 13. It explains that it only withdrew its GAO protest before a decision because the lack of a ruling near the 100-day decision deadline indicated to it that the petition would be dismissed. *Id.* at 16.

The doctrine of laches "bars a claim when a plaintiff's neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party." *Nat'l Telecommuting Inst., Inc. v. United States*, 123 Fed. Cl. 595, 602 (2015) (citations omitted). Laches requires a showing of: (1) unreasonable and unexcused

13

delay by the claimant; and (2) prejudice to the other party. *JANA, Inc. v. United States*, 936 F.2d 1265, 1269–70 (Fed. Cir. 1991). The defendant bears the burden of proving the elements of the defense. *See Nat'l Telecommuting*, 123 Fed. Cl. at 602. The Federal Circuit has recognized laches as an available defense in the bid protest context. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1314–15 (Fed. Cir. 2007) (collecting cases that noted the use of laches in bid protests); *Software Testing Sols., Inc. v. United States*, 58 Fed. Cl. 533, 535–36 (2003) (stating that delay may be "considered in the multi-factored analysis of whether injunctive relief is warranted" or in "the application of equitable doctrines such as laches").

There is no defined length of time for purposes of determining whether laches will apply. Instead, such challenges require a fact-specific inquiry into the reasonableness of the delay and the prejudice to the opposing party. *See, e.g.*, *Glob. Comput. Enters., Inc. v. United States*, 88 Fed. Cl. 350, 423 (2009) (rejecting laches where the claimant waited 31 days after its GAO protest to review the record before bringing suit), *modified on recons.*, 88 Fed. Cl. 466 (2009); *Software Testing Sols.*, 58 Fed. Cl. at 536 (applying laches where the claimant waited several months to weigh the cost of litigation when it knew the contract at issue would quickly be performed); *Reilly v. United States*, 104 Fed. Cl. 69, 78 (2012) (applying laches where the claimant waited nine months to file its protest despite the urgent needs of the contract).

In this case, the facts and circumstances do not support application of laches to bar Elevated's protest. Based on the record of events, there is no indication that Elevated delayed in bringing its claims either before the GAO or this Court. Elevated first learned of the VA's award decision and requested a formal debrief from the Contracting Officer ("CO") on September 27, 2021. AR 919. On October 1, 2021—four days later—Elevated communicated to the CO that it intended to file a protest. AR 1030. On October 7, 2021—ten days after learning of the award

decision—Elevated filed its protest with the GAO.  AR 1214.  On January 4, 2022, Elevated filed this protest simultaneously to withdrawing its GAO protest.  *See* ECF No. 16-1 at 13 n.3.

That Elevated brought a GAO protest nearly immediately after learning of the award decision and filed suit in this Court immediately upon withdrawing its GAO protest distinguishes this case from other protests where courts applied laches.  In *Software Testing Solutions* and *Reilly*, the claimants engaged in months of delay for strategic purposes while hindering time-sensitive contracts.  *See Software Testing Sols.*, 58 Fed. Cl. at 536; *Reilly*, 104 Fed. Cl. at 78.  Here, Elevated pursued relief within a matter of days.  Although GreenEfficient faults Elevated for not waiting for the GAO's ruling before filing this action, Elevated's decision to withdraw its GAO protest quickened the pace of litigation to some degree.  Nor has GreenEfficient provided any factual support for its insinuation that Elevated engaged in strategic "forum-shopping" designed to take advantage of the administrative system.[4]  ECF No. 20-1 at 10.  While Elevated could have sued in the Court immediately after learning of the award decision, it had no obligation to waive its statutory right to a GAO protest.  The fact of the matter is that the law provided Elevated two forums in which to press its protest.

Even if GreenEfficient could demonstrate that Elevated exhibited inexcusable delay in bringing its claim, there is no evidence that this delay caused GreenEfficient the type of prejudice

---

[4] The Court is not unsympathetic to GreenEfficient's concerns on this point.  Why Elevated was unwilling to wait less than two weeks to see if the GAO issued a ruling by the statutory deadline is puzzling, and its decision to withdraw the protest did deprive the parties of the GAO's opinion on the issues raised in the summary dismissal motion (even though Elevated reaped the benefit of the automatic stay in the interim).  That being said, GreenEfficient has not identified any cases in which a protestor who promptly pursued his claim in one available forum, albeit not to resolution, was barred by the doctrine of laches from promptly seeking relief in a second available forum.  If there were evidence that Elevated engaged in this litigation strategy in bad faith, perhaps the conclusion would be different, but GreenEfficient's allegations do not rise to such level.

justifying application of laches.  As the incumbent contractor, GreenEfficient continues to perform elevator maintenance at the DeBakey Medical Center under a bridge contract while this case is being litigated.  *See* ECF No. 17 at 3.  Uncertainty about the fate of the awarded contract may temporarily complicate GreenEfficient's long-term business planning, but Elevated correctly notes that this is a consequence attendant to many bid protests.  *See* ECF No. 23 at 15.  There is no explanation for why maintaining the status quo has significantly prejudiced GreenEfficient (or the Government), either economically or in defending against this protest.  As such, the doctrine of laches does not bar Elevated's Amended Complaint.

**C.    The VA Acted Arbitrarily and Capriciously in Awarding the Contract to GreenEfficient Because GreenEfficient Improperly Submitted Multiple Quotes.**

Turning to the merits, Elevated claims that GreenEfficient's submission contained several fundamental errors that should have disqualified it from the award.  Among these errors, Elevated argues that GreenEfficient impermissibly submitted multiple quotes.  *See* No. 16-1 at 19.  It contends that the RFQ "plainly advised offerors" that submitting multiple quotes would result in a company being deemed nonresponsive and having all quotes rejected.  *Id.*  The Government and GreenEfficient disagree that GreenEfficient submitted multiple quotes.  They argue that GreenEfficient submitted a single response to the RFQ containing alternative prices, which did not require disqualification.  *See* ECF No. 19 at 30; ECF No. 20-1 at 13.  This issue turns on whether GreenEfficient's self-titled "alternate bids," AR 813–14, were "quotes" or "prices" (the former being barred by the RFQ) and, if they were "quotes," whether the VA was required to disqualify GreenEfficient as nonresponsive.

It is undisputed that an agency "may only accept an offer that conforms to the material terms of the solicitation."  *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 518 (2012).  This is no less true in a procurement using the simplified acquisition procedures of FAR Part 13.

16

*See* FAR 13.106-2(a)(2) ("Quotations or offers shall be evaluated on the basis established in the solicitation.").  A response that fails to conform to the material terms of a solicitation "should be considered unacceptable" because "a contract award based on such a proposal violates the procurement statutes and regulations."  *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1329 (Fed. Cir. 2011) (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996)); *ITT Fed. Servs. Corp. v. United States*, 45 Fed. Cl. 174, 194 (1999) ("Generally, the case law provides that a contract award may not be upheld when the [agency] improperly departs from stated evaluation criteria in a solicitation.").

When interpreting the terms of a solicitation, the principles governing contract interpretation apply with equal force.  *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997–98 (Fed Cir. 1996).  Courts "begin[] with the language of the written agreement."  *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (citing *Foley Co. v. United States,* 11 F.3d 1032, 1034 (Fed. Cir. 1993)).  If the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning."  *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quoting *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993)).  In determining the meaning of its terms, a solicitation must be construed as a whole and "in a manner that gives meaning to all of its provisions and makes sense."  *Id.*  (citing *Hughes Commc'ns Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993)).

If a solicitation uses mandatory language, "[t]he dispositive issue is not whether [the offeror's] proposal was reasonable, but whether it complied with the mandatory requirements of the solicitation."  *Beta Analytics Int'l, Inc. v. United States*, 44 Fed. Cl. 131, 139 (1999).  This is because waiver of a mandatory requirement of a solicitation "for the benefit of only one offeror invalidates a procurement decision."  *L-3 Commc'ns EOTech., Inc. v. United States*, 83 Fed. Cl.

643, 653 (2008).  Words such as "shall" and "must" denote the imperative, whereas "should" or "may" denote advisory or non-mandatory terms.  *See* FAR 2.101; *New England Tank Indus. of N.H. v. United States*, 861 F.2d 685, 694 (Fed. Cir. 1989).  However, if a noncomplying defect is "trivial or a mere formality" (*i.e.*, not material), "the bid is not required to be rejected out of hand." *M.W. Kellogg*, 10 Cl. Ct. at 26; *see E.W. Bliss*, 77 F.3d at 449.

The RFQ in this case is not exactly a model of clarity in all respects.  It does, however, contain several unambiguous provisions limiting the number of quotes a contractor could submit in response to the RFQ.  It plainly mandated that if a contractor "submits more than one quote[,] all quotes will be rejected, and the company will be considered nonresponsive."  AR 407.  It also expressly stated that the agency was "not requesting or accepting alternate quotations," AR 414, and provided that quotes which "do not include all information" in accordance with the instructions "will be considered unacceptable and the company will be deemed nonresponsive," AR 407.  The VA underscored these provisions by deleting FAR 52.212-1(e), which typically encourages bidders "to submit multiple offers presenting alternative terms and conditions, including alternative line items . . . or alternative commercial items for satisfying the requirements of the solicitation."  AR 406.  Elevated highlights these provisions, in conjunction with the general solicitation requirement that "quoters must strictly comply with all instructions outlined in [the RFQ]" "[i]n order for a quote to be considered," AR 407, as evidence that GreenEfficient should have been disqualified for submitting multiple quotes.  *See* ECF No. 16-1 at 15.

Since the text of the RFQ included mandatory language requiring the VA to reject all quotes of a contractor that submitted more than one quote, the first step in the Court's analysis is determining whether GreenEfficient's pricing options constituted additional quotes.  The FAR proves a useful starting point on this issue.  It defines "quotations" (or quotes) as "responses to

requests for quotations" under the FAR's simplified acquisition procedures.  FAR 2.101.  Based on this definition, GreenEfficient argues that "only one submission was permitted, but anything else within the submission was fine."  ECF No. 20-1 at 14.  As it concedes, "[h]ad GreenEfficient submitted three separate submissions, then the Agency would have been bound to reject all three."  *Id.*

The evidence in the record demonstrates that GreenEfficient submitted three separate quotes.  Although GreenEfficient sent only one email response to the VA, it attached—in its own words—"3 separate bids in 3 separate PDFs," including a base bid and two alternate bids.  AR 813–14.  Beyond being self-contained in different PDFs, [. . .].  AR 813–14.  Only GreenEfficient's "base bid" provided real-time monitoring for all units, as was required by the RFQ, for a price of $4,661,307.68.  *Id.*; *see* AR 314 (clarifying that "the contractor must provide [real-time monitoring software] for each unit"); AR 751–57 (requesting contractors to "confirm [their] quoted price includes real time monitoring for all 49 units" and clarifying that "[r]eal time monitoring is not just restricted" to certain housing units and buildings).  [. . .].  AR 813–14.  These alternates did not simply provide different prices for different ways of accomplishing the work under the contract within the parameters of the RFQ's Performance Work Statement ("PWS"), as the Government argues is generally acceptable.  *See* ECF No. 19 at 30.  Rather, the additional bids offered the VA a choice between different levels of service that did not conform to the solicitation.  Construing GreenEfficient's submission as merely "multiple pricing structures," ECF No. 20-1 at 13, does not square with the RFQ's unambiguous instructions directing contractors not to submit multiple quotes, alternate quotes, or quotes that failed to comply with the RFQ.[5]  When read as a whole,

---

[5]  For this reason, the Court finds GreenEfficient's interpretation of the term "multiple quotes" unreasonable, *see* ECF No. 20-1 at 13–14, considering both the plain language of the RFQ and the substance of GreenEfficient's submission in response to the RFQ.  Indeed, cutting against

the RFQ required the VA to disqualify GreenEfficient from the award because of this error.

The Government argues that even if GreenEfficient submitted more than one quote, the provision prohibiting this practice "is designed to benefit the Government and can be exercised at its discretion." ECF No. 19 at 29–30. According to Defendants, the provision did not necessarily prohibit the VA from accepting alternate bids, so long as it did not prejudice other offerors, and no prejudice resulted because the VA selected GreenEfficient's base bid. *Id.* at 30 (citing *Grp. Seven Assocs., LLC v. United States*, 68 Fed. Cl. 28 (2005)). The Government accurately describes the general rule, but the RFQ in this case contained an express provision mandating that the VA disqualify contractors who submitted multiple offers. AR 407 (if a contractor "submits more than one quote[,] all quotes will be rejected, and the company will be considered nonresponsive"); *see* AR 414 ("The Government is not requesting or accepting alternate quotations."). This eliminated the VA's typical flexibility and required it to uniformly disqualify contractors for noncompliance regardless of whether the alternate quotes were evaluated or selected. Because quotes must be evaluated on the basis established in the RFQ, which in this case was that all quotes must be rejected if a contractor submits more than one, the Court finds that the "alternate bids" submitted by GreenEfficient required the VA to disqualify it for the award.

That the RFQ contained such mandatory language distinguishes this case from *Group Seven Associates* on which the Government relies. *See* ECF No. 19 at 30. In that case, the court considered whether an awardee should have been disqualified for including three alternate staffing plans within its response to a request for proposals. *Grp. Seven Assocs.*, 68 Fed. Cl. at 29. The solicitation provided that an offeror's "initial proposal should contain the offeror's best terms from

---

GreenEfficient's argument is the fact that every other quoter responded to the RFQ with one submission containing one proposal to meet the requirements of the PWS at one price.

a cost or price and technical standpoint." *Id.* at 32.   Between this provision and the agency's decision to delete FAR 52.212-1(e) (multiple offers), the protestor argued that the awardee's submission of more than one proposal was improper. *Id.*  In rejecting the protester's argument, the court explained the general rule that non-conforming alternate bids may not be accepted, *id.* at 32–33, but that "[m]ultiple bids that are consistent with the solicitation's terms are acceptable" and may be considered (even if some of the alternatives are non-conforming), *id.* at 33 & n.9 (citing *Saxon Export*, 93–2 Comp. Gen. ¶ 130, 1993 WL 342242 (1993)).   The court held that each of the awardee's multiple proposals conformed to the solicitation's requirements (and contained the awardee's best price) and thus the agency was free to choose any one of them. *Id.* at 33.  The court further held that while the agency deleted FAR 52.212-1(e) from the solicitation, that omission meant only that "the agency was not *encouraging* multiple offers.  It [did] not preclude them." *Id.* at 33 n.8.

As explained above, however, the RFQ in this case is distinct from the solicitation in *Group Seven* because it contains express language prohibiting multiple quotes and requiring the VA to disqualify contractors who submitted multiple quotes.  AR 407.   Contrary to the Government's argument, it does not matter that the VA awarded the contract to GreenEfficient on its "base bid," which was conforming. *See* ECF No. 19 at 30.  That GreenEfficient submitted "3 separate bids" was enough to make it nonresponsive according to the terms of the RFQ.  AR 813; *see* AR 407. The Court appreciates the fact that the request for quotations process in a FAR Part 13 procurement is designed to be flexible and that a quote (unlike an offer in response to a solicitation) is not "accepted" by the Government and does not bind the parties. *See* ECF No. 27 at 12; *see also* ECF No. 20-1 at 13.  But where a contracting agency chooses to cabin its own flexibility through clearly stated, mandatory language in an RFQ, the agency is duty bound to adhere to those terms and

21

conditions.[6]  *See PricewaterhouseCoopers Pub. Sector, LLP v. United States*, 126 Fed. Cl. 328, 355 (2016).

The VA's error in awarding GreenEfficient the contract despite it submitting multiple quotes was prejudicial to Elevated.  Had the VA disqualified GreenEfficient, there would have been no technically acceptable quote in response to the RFQ.  The VA would then have had to reconduct the procurement, thereby giving Elevated another opportunity to submit a quote.  *See VAS Realty, LLC v. United States*, 26 F.4th 945, 950 (Fed. Cir. 2022).  Accordingly, Elevated has satisfied the prejudice requirement.  *See id.*; *see also Straughan Evtl., Inc. v. United States*, 135 Fed. Cl. 360, 374 (2016).

The Government contends that even if the VA mistakenly accepted multiple quotes from GreenEfficient, Elevated can be accused of the same because it submitted an updated price six days after the RFQ due date.  *See* ECF No. 19 at 30–31 (citing AR 749–50).  It argues that a bidder cannot establish prejudice if it "benefited from the same potentially unlawful discretion from which the awardee benefitted."  *Id.* at 31 (quoting *G4S Secure Integration, LLC v. United States*, No. 21-1817C, 2022 WL 211023, at *8 (Fed. Cl. Jan. 24, 2022)).  Although a correct statement of the law, this argument fails because submitting an updated price is not the same as submitting multiple quotes.  On September 16, 2021, Elevated emailed the CO with an "updated quote" correcting an error that arose from it misreading a term of the RFQ.  AR 750.  Later that day, the CO confirmed that he received Elevated's "price clarification."  AR 749.  Elevated's update did

---

[6] It does not seem unusual for a contracting agency to self-impose such restriction.  As the secondary source cited by the Government explains, additional evaluation time caused by multiple offers can be unduly burdensome on an agency, including the complications and delay of evaluating "separate price offers."  John Cibinic, Jr. & Ralph C. Nash, Jr., FORMATION OF GOVERNMENT CONTRACTS 782 (3d ed. 1998).  "Thus, agencies may seek to preclude multiple offers by including a provision in the solicitation prohibiting more than one offer."  *Id.* at 782–83.

not alter the proposed services to be provided, nor did it seek to submit an alternate quote for the VA to additionally consider. *Id.* Of course, it would have been within the VA's power to reject Elevated's price clarification as late. *See* AR 404 ("Any offer, modification, revision, or withdrawal of an offer received . . . after the exact time specified for receipt of offers is 'late' and will not be considered" unless certain conditions apply.). However, accepting the correction did not implicate the same "no more than one quote" provision that GreenEfficient violated. As such, Elevated did not equally benefit from the VA's error in accepting multiple quotes.

Accordingly, Elevated has demonstrated that the VA acted arbitrarily and capriciously by awarding the contract to GreenEfficient despite the fact that it submitted multiple quotes, contrary to the terms of the RFQ, and that such error prejudiced Elevated.[7]

**D.   Elevated is Entitled to a Permanent Injunction for the VA's Failure to Disqualify GreenEfficient.**

Having determined that the VA acted arbitrarily and capriciously by failing to disqualify GreenEfficient for submitting multiple quotes, the Court turns to whether Elevated is entitled to injunctive relief. Elevated contends that a permanent injunction setting aside the award to GreenEfficient and ordering the VA to conduct a new procurement is warranted. *See* ECF No. 23 at 10. The Government responds that Elevated is not entitled to an injunction because it delayed in pursuing its claim and is unable to meet the technical requirements of the contract based on its original quote. *See* ECF No. 27 at 13–14.

In order to obtain a permanent injunction, a protestor must show that: (1) it has succeeded

---

[7] The Court need not address Elevated's other protest ground—*i.e.*, that the VA erred in determining that Elevated's quote was technically unacceptable. Although the Court does not believe that Elevated met its burden to show that its quote complied with the RFQ's company-level license requirement, its protest can be sustained on the basis that GreenEfficient's quote should have been disqualified.

on the merits; (2) it will suffer irreparable harm if such relief is not granted; (3) the balance of hardships tips in the protestor's favor; and (4) an injunction will serve the public interest. *Loomacres, Inc. v. United States*, 136 Fed. Cl. 331, 343–44 (2018) (citations omitted).  Under this standard, "[n]o one factor, taken individually, is necessarily dispositive . . . the weakness of the showing regarding one factor may be overborne by the strength of the others."  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).  At the very least, however, a protestor must actually succeed on the merits and demonstrate irreparable harm.  *CliniComp Int'l, Inc. v. United States*, 134 Fed. Cl. 736, 746 (2017), *aff'd*, 904 F.3d 1353 (Fed. Cir. 2018); *see Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (holding that a party must show at least a likelihood of success and irreparable harm to receive preliminary injunctive relief).  To assess irreparable harm, the "relevant inquiry . . . is whether plaintiff has an adequate remedy in the absence of an injunction."  *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993).

Elevated has already demonstrated that the first factor weighs in favor of permanent injunctive relief because it actually succeeded of the merits of its claim that GreenEfficient should have been disqualified from receiving the contract.  *See Excelsior Ambulance Serv., Inc. v. United States*, 124 Fed. Cl. 581, 594 (2015) (actual success factor demonstrated in protest challenging award to offeror with technically unacceptable proposal).

The second factor—irreparable harm—likewise favors injunctive relief because without it Elevated would lose the chance to fairly compete for a lucrative government contract.  *Id.* ("[T]he 'denial of a fair opportunity to compete and loss of financial benefit from a lawful procurement process constitute[s] irreparable harm.'" (quoting *BCPeabody Constr. Serv., Inc. v. United States*, 112 Fed. Cl. 502, 514 (2013))).  Moreover, courts have "repeatedly held that the loss of potential profits from a government contract constitutes irreparable harm." *WaveLink, Inc. v. United States*,

154 Fed. Cl. 245, 288 (2021) (quoting *BINL, Inc. v. United States*, 106 Fed. Cl. 26, 49 (2012)). Although some judges have held that economic injury alone does not rise to the level of irreparable harm unless extraordinary financial circumstances exist, *e.g.*, *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001), the majority hold that loss of a government contract is sufficient. *See Hosp. Klean of Tex., Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005) ("[L]oss of profit, stemming from a lost opportunity to compete for a contract on a level playing field has been found sufficient to constitute irreparable harm."). The Government concedes as much in its briefing. *See* ECF No. 27 at 14 ("In bid protests, the Court recognizes lost potential profits as irreparable harm.").

In response, the Government cites Elevated's lack of urgency in pursuing its claim as evidence that the harm it would suffer is not significant or irreparable. *See id.* But as discussed above, the Court finds that Elevated acted promptly in challenging the procurement decision at the GAO, and it should not be penalized for exercising its right to an administrative remedy. That its quote was otherwise rejected for failing to provide the required license, *see* ECF No. 27 at 13–14, does not diminish Elevated's showing on this factor because GreenEfficient's disqualification would have required the VA to reopen the solicitation and permit parties to improve upon their quotes. Elevated represented that it has a Texas Department of Licensing & Regulation elevator contractor license, *see* AR 1421, which is compliant with the RFQ, and thus the deficiency of its quote will not prevent it from competing in a new procurement. The Government's questioning of whether Elevated can perform the contract based on the key personnel listed in its quote is likewise unpersuasive. *See* ECF No. 27 at 14. The VA did not share those same concerns upon evaluating Elevated's quote; instead, it found Elevated met the personnel experience and certifications requirements. *See* AR 902.

The balance of hardships likewise tips in favor of enjoining the award. On one hand,

Elevated faces the prospect of losing out on fairly competing for the contract even though GreenEfficient should have been disqualified for submitting multiple quotes.  On the other hand, GreenEfficient faces minimal harm, as the Court has already determined that it should not have won the contract in the first place.  The Government is likewise not harmed as GreenEfficient, the incumbent contractor, is performing the elevator maintenance services in the interim pursuant to a bridge contract.  *See* ECF No. 17 at 3.  Thus, requiring the VA to conduct a new procurement will not create any disruption or pose a risk to the safe operation of elevators at the DeBakey Medical Center.  *See Excelsior Ambulance Serv.*, 124 Fed. Cl. at 594.  An injunction would only compel the VA to reopen the solicitation and resolicit quotes from the parties, essentially resetting the procurement to give all parties a fair chance to compete.  *See Turner Constr. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011) ("Injunctive relief is appropriate if it 'enjoin[s] the illegal action and return[s] the contract award process to the status quo ante.'" (quoting *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994))).  Although this would delay the finality of selecting a contractor, any added costs to the Government is "of the agency's own making" by selecting an awardee who did not comply with the RFQ.  *See Sheridan Corp. v. United States*, 94 Fed. Cl. 663, 670 (2010); *Green Tech. Grp., LLC v. United States*, 147 Fed. Cl. 231, 246 (2020) ("Requiring the government to continue purchasing the services from the incumbent for the interim does not outweigh the irreparable harm to an offeror arising from an agency's own failure to comply with the law in awarding the contract.").  As such, the balance of hardships tips in favor of Elevated.

Finally, the public interest favors enjoining the award because "[t]here is an overriding public interest in preserving the integrity of the procurement process . . . ."  *Hosp. Klean of Tex.*, 65 Fed. Cl. at 624.  The record reflects that the VA's decision to award GreenEfficient the contract

violated the terms of the RFQ by overlooking a flaw in GreenEfficient's submission which should have resulted in disqualification.  As is the case here, "honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid."  *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 496 (2013).

Accordingly, each of the factors favors enjoining the award.  Elevated is entitled to the injunctive relief that accompanies its success on the merits.

## IV.  CONCLUSION

For these reasons, Elevated's Motion for Judgment on the Administrative Record (ECF No. 16) is **GRANTED**, the Government's Motion to Dismiss and Cross-Motion (ECF No. 19) is **DENIED**, and GreenEfficient's Cross-Motion (ECF No. 20) is **DENIED**.  The VA is hereby enjoined from proceeding with the contract unlawfully awarded to GreenEfficient.  The VA shall either resolicit the procurement through a new RFQ or permit Elevated and GreenEfficient to submit revised quotes in response to the original RFQ for evaluation in accordance with this opinion.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED**.

Dated: May 6, 2022                                 */s/ Kathryn C. Davis*
                                                              KATHRYN C. DAVIS
                                                              Judge